**UNITED STATES, Appellee,**

v.

**Master Sergeant Donald R. CLARK, SSN 205–32–9011, United States Army, Appellant.**

**CM 442636.**

U.S. Army Court of Military Review.

31 March 1983.

Colonel William G. Eckhardt, JAGC, Lieutenant Colonel R. Rex Brookshire II, JAGC, Major Robert C. Rhodes, JAGC, and Captain Peter R. Huntsman, JAGC, were on the pleadings for appellant.

Lieutenant Colonel John T. Edwards, JAGC, Captain Patrick M. Flachs, JAGC, and Captain Karen A. Charbonneau, JAGC, were on the pleadings for appellee.

Before HANSEN, MILLER and BADA-MI, Appellate Military Judges.

OPINION OF THE COURT

BADAMI, Judge:

The appellant appeals from his conviction of three specifications of rape of his daughter, Susan, committed "at various times" between 15 January 1979 to 18 April 1980, "at various times" between 1 September 1981 and 15 December 1981, and on 23 December 1981. He was also convicted of a single specification of an indecent, lewd and lascivious act with his daughter occurring on 4 January 1982.[1] At trial, after relating that she was born on 10 December 1967, Susan was permitted to testify that appellant's first attempts to have sexual intercourse occurred when she was six or seven years old. The principal issue on appeal is whether Susan's testimony concerning her father's previous sexual misconduct occurring four to six years prior to the charged misconduct was admissible.

At trial the appellant pled guilty to the lesser included offense of carnal knowledge concerning the 1 September 1981 to 5 December 1981 time period and the specific time of 23 December 1981. As to these dates, the sole issue was consent. The appellant denied committing the sexual offenses concerning the 15 January 1979 to 18 April 1980 time period.

Sometime after 9 p.m., on 4 January 1982, when she retired, the appellant entered his daughter's bedroom. She was fourteen years old. The appellant began rubbing her breasts, asked her if she loved him and was she his "Boobie-Baby." She knew he was there to have sexual intercourse for he had been coming into her bedroom for this purpose since she was six or seven years old. She was scared it was going to happen again. She had always been scared, but before she didn't physically resist because she felt she "didn't have any choice." If she would cry or say it hurt, he wouldn't stop. Other times she would escape by telling her father she had to go

---

1. Rape is a violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (1976). Indecent, lewd and lascivious acts with a minor is a violation of Article 134, UCMJ. The appellant was sentenced to a dishonorable discharge, confinement at hard labor for 3 years, total forfeitures, and reduction to Private E-1.

someplace or by keeping her brother by her side. This time, however, was different. She hit her father. After a minute the father made an angry sound, turned around and walked out.

Christmas 1981 was upsetting for there were no presents. The appellant was financially hard pressed. His daughter had told her parents that if they gave the little ones presents for Christmas they could wait until payday, but that never happened. Feeling unloved, wanting very much to have a family, and because her inner sense of "morality" told her that what was happening with her father was wrong, the daughter finally "confessed" to the school nurse all that was going on.[2]

On 23 December 1981, Susan used her father's bathroom. When she exited the bathroom into her parent's bedroom, appellant was present in the room. He told her to stay there while he went downstairs to tell his sons to remain downstairs. Appellant came upstairs, told Susan to remove her clothes and lie on the bed; he removed his clothes and had sexual intercourse with her. Susan was frightened, as she had been during other incidents, that if she said "no" appellant would hit her.

Between 1 September and 14 December 1981, appellant had sexual intercourse with Susan five to ten times. At times appellant would motion his daughter to go upstairs. She would become afraid and would have her brother, sixteen years old, go to her room with her for protection from her father. Appellant never asked Susan if she wanted to have intercourse; he would simply tell her to "do this and do that." Susan allowed appellant to perform these acts on her because she believed she had no choice because he told her to do so.

Between 15 January 1979 and 18 April 1980, appellant had sexual intercourse with Susan once or twice a month. Actual intercourse began during appellant's first tour of duty at Fort Riley. Susan was nearly nine at that time.

The uncharged misconduct concerned the first sexual incidents between appellant and his daughter, occurring when Susan was six or seven years old and the family was living at Fort Campbell. Appellant entered her room while she slept. She woke up to find him rubbing her body. She told her mother, who told her "not to say things like that; it wasn't nice." The appellant was to come back many times.

### I. The Uncharged Misconduct

█ The general rule is that evidence of prior acts of sexual misconduct is not admissible when the only issue is whether the alleged act was with the consent of the alleged victim. *United States v. Woolery*, 5 M.J. 31, 33 (C.M.A.1978). However, the general rule gives way to the exception if the evidence of prior acts is between the same parties and at issue are the victim's physical resistance or the accused's disposition to commit the act charged. *United States v. Hinote*, 1 M.J. 776 (A.F.C.M.R. 1976); *see Miller v. United States*, 207 F.2d 33 (D.C.Cir.1953). The relevance lies in the futility of continued resistance and the probability that the accused's emotional predisposition will continue.

█ In the case before us the Government sought to show that Susan was incapable of physically resisting her father's advances because of her tender years. The only interruptions in sexual activity occurred when the father was absent from home.[3] A combination of sexual abuse during her early years and the continuing pattern of sexual behavior at home rendered Susan incapable of consenting to the charged acts. Stark common sense tells us that in cases of rape of children under the age of consent, it is often important to show the relationship of the parties, their relative size, age and strength, and when

---

2. Charles Dickens observed, "In the little world in which children have their existence, whosoever brings them up, there is nothing so finely perceived and so finely felt, as injustice." Great Expectations, Chapter 9.

3. The appellant was assigned to Korea from September 1975 to September 1976 and June 1980 to April 1981, and participated in military exercises in Germany in September 1981.

present, how one entrusted with the care and guidance of an off-spring has failed in that relationship and adopted an incestuous attitude toward his charge. *Crawford v. United States,* 198 F.2d 976 (D.C.Cir.1952). We conclude that the testimony was material and relevant.

However, our inquiry does not end there. For having concluded that the evidence was relevant, it remains to be determined whether the relevance of this evidence was substantially outweighed by the danger of unfair prejudice to the appellant. Military Rules of Evidence 403. "Unfair prejudice" as intended by the drafters of the rule does not mean evidence which is adverse to an opposing party for virtually all evidence is prejudicial or it isn't material. Rather, "unfair prejudice" means an undue tendency to decide an issue on an improper basis, commonly, though not necessarily, an emotional one. S. Saltzburg, L. Schinasi, and D. Schlueter, Military Rules of Evidence Manual, 177 (1981). As appellate judges, we are reminded that the balancing of the probative value of the evidence against its potential prejudicial effect is within the sound discretion of the trial judge whose determination is to be upheld unless an abuse of discretion is found. *United States v. Vitale,* 596 F.2d 688, 689 (5th Cir.), *cert. denied* 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979).

As we previously observed, the evidence was material on the issue of consent since it served to explain the absence of physical resistance to what was otherwise an unpleasant and painful experience. Although we have admonished that there must be reasonable limitations in time, place and circumstances between the offenses charged and the uncharged misconduct, *United States v. Hancock,* 14 M.J. 998 (A.C. M.R.1982), it is precisely the ancient vintage of the acts, occurring at such a tender age and the continuing pattern of behavior, that makes·the evidence especially relevant and probative. We do not believe that any "unfair prejudice" resulted from the daugh-

ter's testimony as to these early experiences. The military judge, recognizing the possible emotional impact of this testimony, cautioned that he would not allow the evidence to "develop some kind of prejudicial attitude against the accused." Moreover, the already substantial testimony of the appellant's incestuous relationship extending back to January 1979, diminished any emotional impact this evidence might have otherwise had. We conclude the military judge did not abuse his discretion.

## II. Sufficiency of the Evidence

We have also considered appellant's contention that the evidence is insufficient to establish beyond a reasonable doubt that his daughter did not consent to the acts of sexual intercourse. Of course, the unlawful sexual intercourse with a female under the age of consent (sixteen years) is a crime whether the female consents or not. Paragraph 199, Manual for Courts-Martial, United States, 1969 (Revised edition). But, the distinction is important since it defines two types of misconduct found in the same Article but with different penalties.

Aside from the credible and common-sense evidence from a child psychologist that the daughter's tender age rendered her incapable of physically resisting the commands of a parental authority, we find the evidence of the daughter's resistance sufficient to establish that the act was without consent. In simple terms the question is whether the daughter was willing or unwilling to participate in sexual intercourse with her father and the unequivocal answer is that she was unwilling. In part, this was evidenced by the daughter's attempts to evade her father's advances, his intimidating responses when she resisted, and her father's persistance even when told that it "hurt."[4] We conclude that the evidence proves beyond a reasonable doubt the appellant's guilt of each and every offense.

The findings of guilty and the sentence are affirmed.

Chief Judge HANSEN and Senior Judge MILLER concur.

---

4. We are reminded of the words of Elizabeth Barrett Browning in The Cry of the Children,

Stanza 13. "The child's sob in the silence curses deeper than the strong man in his wrath."