UNITED STATES

v.

**Roy G. JERASI, 439 37 7528, Seaman Apprentice (E-2), U.S. Navy.**

**NMCM 84 3554.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 27 Jan. 1984.

Decided 23 May 1985.

CDR David C. Larson, JAGC, USN, Appellate Defense Counsel.

LT Marva J. Daniel, JAGC, USNR, Appellate Defense Counsel.

LT Lance C. Cantor, JAGC, USNR, Appellate Government Counsel.

LT David O. Vollenweider, III, JAGC, USNR, Appellate Government Counsel.

En Banc.

BARR, Judge:

Appellant was tried by military judge alone, sitting as a special court-martial, and convicted, contrary to his pleas, of violations of Articles 91, 108, 121 and 130, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 891, 908, 921, 930. The sentence adjudged extended to a bad conduct discharge, confinement for 60 days, forfeitures of $250.00 pay per month for two (2) months and reduction to pay grade E–1.

The record of trial contains the following colloquy between the military judge and appellant concerning the latter's rights to counsel representation before his court-martial:

MJ: All right. I'll explain your counsel rights to you, Seaman Apprentice Jerasi. I fully understand you've discussed these matters with your detailed counsel, but I

want to explain them again on the record. Initially, you have the right to hire a civilian attorney at your own expense to defend you in your court-martial trial. Are you aware of that?

ACCUSED: Yes, sir.

MJ: If you hired a civilian lawyer, you could still retain Lieutenant Commander McGuan as an associate counsel, or if you wanted, you could excuse him, but it would depend entirely on what you wanted to do. Are you aware of that?

ACCUSED: Yes, sir.

MJ: Now, you may also request representation by some other military lawyer of your own choosing, someone other than Mr. McGuan. If you made a request for some other military lawyer and if that requested military lawyer was, in fact, made available to assist you, that would not cost you anything, it would be a government expense. Do you understand?

ACCUSED: Yes, sir.

MJ: You are entitled only to one military lawyer at any given time, however. If you requested someone else who was made available, Mr. McGuan would automatically be excused and he wouldn't participate further in your behalf. Do you understand that?

ACCUSED: Yes, sir.

MJ: Do you have any questions as to your rights to counsel?

ACCUSED: No, sir.

MJ: You have to speak up so I can hear you.

ACCUSED: No, sir.

MJ: Do you intend to hire a civilian lawyer to represent you?

ACCUSED: No, sir.

MJ: Are you going to request representation by some other military lawyer other than Mr. McGuan?

ACCUSED: No, sir.

MJ: Are you satisfied with being represented by Mr. McGuan and no one else?

ACCUSED: Yes, sir.

The tenor of the above recited advice and, in particular, the comment that, if a requested individual military attorney were made available, the detailed counsel "would automatically be excused and he wouldn't participate further" in appellant's behalf, caused this Court to address, and request briefs of counsel on, the following specified issue:

WHETHER THE MILITARY JUDGE'S ADVICE TO APPELLANT CONCERNING HIS COUNSEL RIGHTS WAS SUFFICIENT UNDER ARTICLE 38(b), UNIFORM CODE OF MILITARY JUSTICE?

Due to conflicting opinions issued by different panels of this Court in cases involving identical or similar advice colloquies, the issue was set for consideration by the Court sitting *en banc*. Oral argument was requested, granted and heard.

■ Upon reflection, the issue more appropriately should have been posited as follows:

WHETHER THE MILITARY JUDGE'S ADVICE TO APPELLANT CONCERNING HIS COUNSEL RIGHTS WAS SUFFICIENT TO COMPLY WITH THE MANDATE ENUNCIATED IN *UNITED STATES V. DONOHEW*, 18 U.S.C.M.A. 149, 39 C.M.R. 149 (1969)?

We reach this conclusion because, no advice procedure being mandated by Article 38(b), UCMJ, 10 U.S.C. § 838(b), no violation of that article occurs where the contended error raises only an issue as to the sufficiency of advice. In other words, it is the *advice* as to counsel, *not* a contention of *denial* of a statutory right to counsel, that is at issue. Accordingly, we will consider the adequacy of the advice tendered in this case in the context of *Donohew* and note that appellate counsel, in fact, briefed and argued the case from that posture.

I

It is not without importance that we attempt to establish, at the outset, the basis upon which the *Donohew* advice mandate was issued and, thus, upon which reversal in those cases which have not applied its specific dictate was then predicated. An attempt to diagram the various grounds

upon which such judicial action could have been arguably sanctioned might reveal the following broad concepts: (1) an error of constitutional dimension affecting a fundamental right of an accused, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); (2) an error of constitutional dimension not affecting a fundamental right, *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); (3) a violation of "military due process," *United States v. Clay,* 1 U.S.C.M.A. 74, 1 C.M.R. 74 (1951); (4) the concept of "specific prejudice," *United States v. Lucas,* 1 U.S.C.M.A. 19, 1 C.M.R. 19 (1951); (5) the concept of "general prejudice," *United States v. Berry,* 1 U.S.C.M.A. 235, 2 C.M.R. 141 (1952), and *United States v. Lee,* 1 U.S.C.M.A. 212, 2 C.M.R. 118 (1952); and, (6) the exercise of a judicially assumed supervisory power over the administration of military justice.

It cannot be contended that the procedure which *Donohew* prescribed was promulgated to correct a constitutional error or owes its origin to a mandate of the Constitution. The constitutional right to be represented by counsel was not in issue. Though *Donohew* involved a special court-martial in which that accused was represented only by non-lawyer counsel, subsequent decisions of the Court of Military Appeals made clear that the advice rule enunciated therein applied even to those cases where a military accused was detailed military lawyer counsel as a matter of statutory right. *See United States v. Bowman,* 20 U.S.C.M.A. 119, 42 C.M.R. 311 (1970). Furthermore, if the fundamental right to counsel had been involved, the numerous cases reviewed by the Court of Military Appeals which were tried between the date of the *Donohew* decision and the 30-day prospective application of its Rule would have been reversed.[1] Such disposition did not occur. *See e.g., United States v. Hiatt,* 18 U.S.C.M.A. 183, 39 C.M.R. 183 (1969), and *United States v. Flute,* 18 U.S.

C.M.A. 187, 39 C.M.R. 187 (1969), and the cases decided in between, and *United States v. Hamm,* 18 U.S.C.M.A. 208, 39 C.M.R. 208 (1969), and *United States v. Atherton,* 18 U.S.C.M.A. 215, 39 C.M.R. 215 (1969), and the interim cases.

Even after the Military Justice Act of 1968,[2] which guaranteed to an accused the statutory right to be represented by detailed lawyer counsel in virtually every special and general court-martial, the Rule of *Donohew* continued to be the basis for reversal if not followed. Since the constitutional right to counsel is fully accorded once lawyer counsel is detailed to represent a military accused, pursuant to the authority of Article 27(c), 10 U.S.C. § 827(c), UCMJ, 10 U.S.C. § 827(c), as amended by the Military Justice Act of 1968, it cannot be maintained that reversals based on *Donohew* are required by the Constitution.

Similarly, it can be concluded that the concept of "military due process" was not the genesis of the *Donohew* Rule, or the foundation upon which it was built. The seminal case of *United States v. Clay, supra,* first articulated the "pattern" thereafter referred to as "military due process":

> (W)e look to the *acts of Congress* to determine whether it has declared that there are *fundamental rights* inherent in the trial of military offenses which must be accorded to an accused before it can be said that he has been fairly convicted. There are *certain standards* in the military accusatorial system which have been *specifically set by Congress* and which we must demand be observed in the trials of military offenses. Some of these are more important than others, but all are of sufficient importance to be a significant part of military law. We conceive these rights to mold into a pattern similar to that developed in federal civilian cases. For lack of a more des-

---

**1.** It is to be noted that *Donohew* was reversed, not on the ground that counsel rights had been denied, but, rather, on the ground of cumulative error.

**2.** Pub.L. No. 90–632, 82 Stat. 1335 (1968).

criptive phrase, we label the pattern as "military due process" ...

Generally speaking, due process means a course of legal proceedings according to those Rules and principles which have been established in our system of jurisprudence for the enforcement and protection of private rights. For our purposes, and in keeping with the principles of military justice developed over the years, we do not bottom those rights and privileges on the Constitution. *We base them on the laws as enacted by Congress* ...

\* \* \* \* \* \*

Under our powers as an appellate court we can reverse for errors of law which materially prejudice the substantial rights of the accused, and we need go no further than to hold that the *failure to afford to an accused any of the enumerated rights denied him military due process and furnishes grounds for us to set aside the conviction.*

\* \* \* \* \* \*

*(W)e are ... required to hold the error materially prejudiced the substantial rights of the accused,* for the reason that we cannot say one of the historic cornerstones of our system of civil jurisprudence is merely a formality of military procedure. If Congress specifically grants what it considers to be a substantial right, we cannot deny the authoritative requirement by refusing to recognize it. (Emphasis supplied).

*United States v. Clay,* 1 C.M.R. at 77–78, 81.

█ It is self-evident from the foregoing language that the threshold requisites to the application of the concept of "military due process" are the existence of an act of Congress which grants a fundamental right to a military accused and the denial of that right in the course of a court-martial proceeding. Once both of these requisites are evidenced, the concept of "military due process" demands a finding that the denial was *per se* materially prejudicial to the substantial rights of an accused. No search for prejudice is ever undertaken.

The mandate of Article 59(a), UCMJ, 10 U.S.C. § 859(a), that a reversal should not follow unless such prejudice exists, is not ignored. To the contrary, it is applied with intractable judicial fervor, for denial of a congressionally created right is, under "military due process", always materially prejudicial—as a matter of law.

The Court in *Donohew* candidly admitted that the act of Congress under consideration—Article 38(b), UCMJ—both had been complied with and required no more than what was afforded in that case. Thus, a denial of "military due process" was not at the core of that decision. Conclusive evidence of this fact is found, again, in the numerous cases reviewed after *Donohew* in which its advice rule was not applied. Had "military due process" been the conceptual genesis for the *Donohew* Rule, that case and all cases following would have been reversed on the basis of *per se* material prejudice.

Any consideration of the principle of prejudice must be divided into two prongs—specific prejudice and general prejudice. It is abundantly clear that, notwithstanding any broader construction, Article 59(a), UCMJ, speaks to specific prejudice, that is, "that to be derived from the facts and circumstances of the particular case before the Court and either more or less demonstrably operative against the accused there." *United States v. Berry,* 2 C.M.R. at 146. It is equally clear that *Donohew* was not premised on the concept of specific prejudice. *Donohew* was decided in 1969. The word "prejudice" does not appear in any form within that part of the opinion which examined and discussed the issue of counsel representation and advice. In point of fact, it was not until the decision of *United States v. Whitmire,* 21 U.S. C.M.A. 268, 45 C.M.R. 42 (1972), that the word "prejudice" was even suggested, by hint or otherwise, as a basis for decision. In the interim, numerous cases were affirmed, because tried before the 30-day prospective date of *Donohew,* or reversed, because, being tried after that date, they did not contain the advice mandated by *Donohew.* There can be no question but that, as

to the cases affirmed, the Court's decision was the product of a consideration of Article 59(a), UCMJ, and a resultant finding that no specific prejudice existed.

■ What then was the basis for the pronouncement in *Donohew* and the ground seized upon for reversing those cases which failed to follow its "advice" mandate? The answer lies in the conjoiner of the concept of "general prejudice"—utilized as the approach—and the supervisory power declared by the Court of Military Appeals to be possessed by it over the administration of military justice—the vehicle chosen to legitimize that approach.

We have previously adverted to the fact that Article 59(a), UCMJ, addresses, at a minimum, the principle of "specific prejudice." If that article were to be applied with precise adherence to its command, it is arguable that no case could be reversed absent a finding of specific prejudice. The Court of Military Appeals recognized this proposition of limitation and concluded that it was insufficient, both as a control device in the supervision of military justice and as a means to ensure that the "scheme of military law administration [be] made nearly in accord with the American system of justice." *United States v. Berry*, 2 C.M.R. at 147. To meet these ends, the Court considered the parameters of Article 59(a), UCMJ, and fashioned the concept of "general prejudice." This interpretive analysis was pronounced in *United States v. Lee, supra*:

> Whether this error should be deemed to constitute reversible error,—that is, whether there is a fair risk that it materially prejudiced the substantial rights of the accused—is, however, another matter.... The Uniform Code of Military Justice, Article 59(a), ... provides for the area of military judicial administration the "harmless error statute" found in other federal ... legislation ...
>
> \* \* \* \* \* \*

Two possible limitations on the manifest and proper policy of Article 59(a) and similar legislation have been proposed elsewhere, and we mention them with approval. First, where the error, involves a recognizable departure from a constitutional precept, and, second, where it constitutes a departure from an express command of the legislature.... It has been suggested that in both of these situations great care should be exercised in the application of "harmless error" legislation, and that in some instances, at least, the otherwise beneficial policy of such legislation should give way to more compelling considerations....

\* \* \* \* \* \*

[W]e are not at all sure that equal caution should not also be exercised in the invocation of this otherwise wholesome principle in perhaps one further setting. We have in mind here a situation in which the error consists not in a violation of constitutional or legislative provision, but involves instead an overt departure from some "creative and indwelling principle"—some critical and basic norm operative in the area under consideration. Such a compelling criterion we find within the sphere of this Court's effort in the sound content of opposition to command control of the military judicial process to be derived with assurance from all four corners of the Uniform Code of Military Justice.

*United States v. Lee*, 2 C.M.R. at 122–123.

This latter "situation" the Court defined as "general prejudice." The language employed by the Court in stating the principle suggests the belief that "general prejudice" is operative outside the confines of Article 59(a), UCMJ.[3] In other words, if a procedure is found which departs from "some critical and basic norm operative in the area under consideration"—or the absence of such a procedure would lead to the same result—its presence—or absence—constitutes "general prejudice" and, in

---

**3.** *See,* however, *United States v. Woods,* 2 U.S.C. M.A. 203, 8 C.M.R. 3 (1953) (Brosman, J., concurring).

such a case, no test for specific prejudice, as mandated by Article 59(a), UCMJ, is entertained by the Court. It is the departure from, or absence of, the "critical and basic norm" of procedure—the existence of which constitutes general prejudice—which occasions reversal, even when it is manifest that the individual accused has not been specifically prejudiced in the context of Article 59(a), UCMJ.

The establishment of the approach styled "general prejudice" was sufficient, in and of itself, to resolve those cases where the procedure followed in the trial court departed from the "critical and basic norm." Reversal, coupled with the admonition to cease following the condemned procedure, were all that was required. In those instances, however, where the procedure provided by the Code or the *Manual for Courts-Martial, United States, 1951* (MCM, 1951), fell short of meeting this norm—that is, where a "critical and basic norm" was recognized by the Court to exist but was not part of prescribed military practice—the necessity for an enabling power to transform the dictate of the Court into a judicially created procedure binding on military justice practice was recognized. This enabling power took the form of the exercise by the Court of Military Appeals of a general supervisory power over the administration of military justice—similar to that possessed by the United States Supreme Court over lower federal courts.

## II

Admitting that neither principle is articulated therein, with what degree of confidence can it be maintained that *Donohew* was decided utilizing the approach of general prejudice, to be prospectively applied in the exercise of the Court's supervisory power? Though the route of proof is somewhat extended, the consanguinity is provable. In its decree of prospective application of the advice rule pronounced, *Donohew* referenced *United States v. Rinehart*, 8 U.S.C.M.A. 402, 24 C.M.R. 212 (1957). In that case, the Court voided the practice then current of permitting court-martial members to consult the *Manual for Courts-Martial* in their deliberations. In part, this determination was reached by comparing the practice condemned with its impermissible application in civilian practice. The Court adopted the civilian standard and, in doing so, recognized that it was "molding military practice by way of adjudication." *United States v. Rinehart,* 24 C.M.R. at 219. Though the rule announced was given prospective effect, the Court reserved unto itself, "in cases presently pending before us as well as in those which reach us in the near future, the privilege of applying the principles here announced 'whenever injustice or hardship will thereby be averted.'" Thus, the Court announced the prospective rule which would, for cases tried 30 days after the date of promulgation, lead to reversal based on the principle of general prejudice without search for, and notwithstanding the absence of, specific prejudice. This view is substantiated in *United States v. Henderson,* 11 U.S.C.M.A. 556, 567, 29 C.M.R. 372, 383 (1960), wherein the Court stated:

> We point out that this case was tried before our decision in *United States v. Rinehart,* 8 U.S.C.M.A. 402, 24 C.M.R. 212, ... Thus, even assuming ... that the Manual had been consulted, there is no reason to disturb the findings or sentence in the absence of specific prejudice.

The proof set forth above being sufficient to show that the concept of general prejudice was the approach chosen for articulation of the advice rule in *Donohew,* it remains to discover the source of the enabling power which the Court seized upon to pronounce the rule. The answer is found in *Gale v. United States,* 17 U.S.C.M.A. 40, 37 C.M.R. 304 (1967). Confronted with a contention that the Court did not possess the power to grant extraordinary relief under the All Writs Act, 28 U.S.C. § 1651, the Court spoke to the issue of its jurisdictional power. As relevant to the instant issue, the Court stated:

> We have never doubted the extent of our authority over military criminal proceedings. In *United States v. Rinehart,* 8

U.S.C.M.A. 402, 24 C.M.R. 212, we exercised our general supervisory powers to direct discontinuance of use of the Manual for Courts-Martial, supra, in future cases, expressly noting we were prospectively "molding military practice by way of adjudication."

*Gale v. United States*, 37 C.M.R. at 306.

It can thus be concluded, with perfect confidence, that Donohew's rule of advice was promulgated pursuant to the Court's adopted supervisory power over the administration of military justice and that a failure to follow the rule would result in reversal predicated on the concept of general prejudice—the advice rule being thus established as a "critical and basic norm"—without regard to the presence or absence of specific prejudice under Article 59(a), UCMJ.

### III

What then was the "critical and basic norm" established by *Donohew?* Our consideration of *Donohew* and its progeny leads us to conclude the "norm" was a procedural rule incorporating a broad policy statement concerning advisement of the rights to lawyer counsel—*but with significant limitations.*

Perspective, we believe, is enhanced if *Donohew* is considered in light of the rights to counsel possessed by a military accused at the time of that decision—and, thus, provided to that particular accused—and the legal, as well as paternalistic, rationale upon which the decision was predicated. Article 38(b), UCMJ, as enacted at the advent of the Code, and as applicable in *Donohew,* provided:

The accused shall have the right to be represented in his defense before a general or special court-martial by civilian counsel if provided by him, or by military counsel of his own selection if reasonably available, or by the defense counsel duly appointed pursuant to article 27. Should the accused have counsel of his own selection, the duly appointed defense counsel, and the assistant defense counsel, if any, shall, if the accused so desires, act as his associate counsel; otherwise they shall be excused by the president of the court.[4]

The qualifications demanded of "defense counsel duly appointed pursuant to article 27" depended, in general, on the forum to which a case was referred for trial by court-martial. The general rule was that appointed counsel before a general court-martial must be a lawyer, whereas, in the case of a special court-martial, the appointment of non-lawyer counsel was sufficient to fulfill the codal mandate of Article 38(b), UCMJ.

Without question, the Court in *Donohew* reached the conclusion that the provisions of Article 38(b), UCMJ, Paragraph 46*d*, MCM, 1951 (which charged an accused's appointed counsel with the duty of advising that accused prior to trial of his Article 38(b) rights), and Appendix 8, MCM, 1951 (the Manual "trial guide") were insufficient to meet the "critical and basic norm" perceived to be essential to the just implementation of Article 38(b), UCMJ, in the military.

While we recognize Government's position, we do not believe it accords sufficient interest in, or solicitude for, determining that an accused adequately understands a most valuable right accorded him by the law.[5]

*United States v. Donohew*, 39 C.M.R. at 152.

What factors impelled the Court to fashion a new norm in this area? First, the Court of Military Appeals had established a

4. Act of 5 May 1950, Pub.L. No. 506, 64 Stat. 108 (1950).

5. The Government position, as stated by the Court, was that "a simple inquiry by trial counsel and an affirmative reply by defense counsel is all that is *required* by the Manual's or the Navy's trial guides; that absent some showing an accused did not understand the advice, or in fact was denied the opportunity to select individual counsel, civil or military, of his own choice, nothing more is necessary to an affirmative resolution of the question in this or any similar case." *United States v. Donohew* at 151–152, 39 C.M.R. at 151–152.

record for applying a special scrutiny to those court-martial convictions reviewed where the military accused's only counsel was the appointed non-lawyer. *See, e.g., United States v. Pinkston,* 6 U.S.C.M.A. 700, 21 C.M.R. 22 (1956). *Donohew* involved such a case—trial by special court-martial with representation by non-lawyer counsel.

Second, it is important to note the cases cited by the Court in suggesting its rationale for adopting this new norm:

Recent decisions of the highest court in the land have greatly upgraded an accused's right to the advice and assistance of counsel, both before and at time of trial. *See,* generally, *Gideon v. Wainwright,* 372 U.S. 335, 9 L.Ed.2d 799, 83 S.Ct. 792 (1963), and *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966). In addition, specific procedures have been established for a showing, on the record, that these rights have been properly accorded.

*Gideon,* which applied the Sixth Amendment right to counsel to criminal proceedings in state courts, via the theory of selective incorporation under the Due Process Clause of the Fourteenth Amendment, stands for the broad proposition that a person criminally accused is entitled to the assistance of counsel at trial unless the right is knowingly and intelligently waived. *Miranda* basically applies the same concept to the pretrial interrogation setting. The common thread to both decisions is that waiver of the right to the advice of lawyer counsel can only be predicated upon a knowing and intelligent waiver—which necessarily requires that advice of the right be both given to the accused and proved upon the record. It was this thread that, insofar as reliance on *Gideon* and *Miranda* was addressed, prompted the Court to establish the advice requirement enunciated in *Donohew.* In the words of the Court:

[O]ur prime inquiry deals with the accused's knowledge of his right to counsel as provided in Article 38(b), Code ...

*United States v. Donohew,* 39 C.M.R. at 151. In short, the Court determined that the record must evidence an understanding by the accused that when he walked into court with a non-lawyer, he had the right to hire (civilian) or select (military) lawyer counsel.

The third factor instrumental in the decision by the Court to fashion a new "critical and basic norm" for trials by court-martial can be best described as being embodied within the paternalistic attitude of that Court, developed during the formative years of practice under the Code and continued ostensibly unabated—at least as to cases in which a military accused was represented by non-lawyer counsel. We need not recite, as evidence of this paternalism, the matters relied upon by the Court in *Donohew* as justification for adoption of the "norm" devised. It is sufficient to state that those matters were significant at the time *Donohew* was tried.[6]

It would be easy to extrapolate from these factors the most logical view that *Donohew* was intended to apply only to special court-martial cases where the accused was represented by non-lawyer counsel. However, *United States v. Bowman, supra* (trial by general court-martial at which accused was represented by lawyer appointed counsel) and *United States v.*

---

6. We are persuaded that the factors which occasioned the application of a special scrutiny test and the adoption of a *parens patriae* attitude no longer obtain. Since the Military Justice Act of 1968, an accused's right to detailed counsel qualified pursuant to Article 27, UCMJ, 10 U.S.C. § 827, means the right to lawyer counsel detailed to represent him. In our view, the foundation upon which both the special scrutiny and paternalism factors were developed is an archeological relic of the law of the past. In support of this position, we would merely refer

to the comments of Chief Judge Everett given during the hearings on H.R. 4689, 97th Congress, before the Armed Services Committee, House of Representatives. "I would say that the level, the average level of representation [by military detailed counsel], is exceptionally good and really is at least as good as that with which I was familiar for assigned counsel in civilian practice." While we are without power to compel a departure from this role of solicitude and paternalism, we certainly do advocate its abandonment.

*Fortier,* 19 U.S.C.M.A. 149, 41 C.M.R. 149 (1969) (lawyer military counsel appointed to represent accused at a special court-martial) evidence a complete disavowal of such a restriction.

## IV

▉ To more specifically respond to our earlier query, the "critical and basic norm" created by *Donohew* was stated as follows:

We believe the seriousness of the situation dictates that the record should contain the accused's personal response to questions incorporating each of the elements of Article 38(b), as well as his understanding of his entitlement thereto.

*United States v. Donohew,* 39 C.M.R. at 152.

We read into this advice rule four salient ingredients. First, the words "seriousness of the situation" refers to the matters addressed by the Court which called for that "extraordinary concern" we have styled as paternalism. Second, a question-response colloquy between the president of the court and the accused was ordered. In *Bowman,* the duty to question the accused was placed upon the law officer in a general court-martial, and in *United States v. Carter,* 20 U.S.C.M.A. 146, 42 C.M.R. 338 (1970), upon the military judge. A reading of those cases reveals that it was the form in which the advice was tendered, and not the substance of the advice, which triggered the results.[7] We cannot avoid the conclusion that, in part, the question-response requirement was bottomed on the principle of paternalism.

The third ingredient is that the advice to the accused must recite the elements of Article 38(b), UCMJ. The obvious question which arises is: To what does the term "elements" refer? One might initially perceive the answer to be found in a rote recitation of the entirety of Article 38(b). This view was rejected in *United States v. Turner,* 20 U.S.C.M.A. 167, 43 C.M.R. 7

(1970). In that case, the military judge correctly advised, and obtained the assurance of understanding by, the accused that he was entitled to be represented by a civilian counsel, at no cost to the government, and by an individual military counsel of his selection, at government expense. The accused further stated, in his responses of election, that he did not desire civilian counsel and was satisfied to proceed solely with the representation of his detailed lawyer counsel. Before the Court of Military Appeals, that accused argued that the military judge violated the rule of *Donohew* when he failed to inform that accused that even if represented by civilian counsel he could retain his detailed lawyer as associate counsel. The Court rejected this contention out of hand:

[I]t was not this aspect of knowledge about rights to counsel that inspired our concurrence in the Donohew opinion. In our view, the basic objectives were the assurances that accused know of his rights to retain civilian counsel or to select a military counsel different from the one detailed to him.

*United States v. Turner,* 43 C.M.R. at 10. What is clear from *Turner* is that the "elements" of Article 38(b), as then in effect, and which formed the roots of *Donohew,* were limited to the rights to retain individually selected counsel, civilian or military. As the holding unequivocally evidenced, the right of the accused to retain his detailed counsel, should he decide to be represented by individual counsel, was not an element of the *Donohew* norm—even though the accused's right to such retention was absolute under the then extant law. Furthermore, a requirement to initially advise an accused that he was entitled to be represented by his detailed counsel—though such is specified as the basic right under Article 38(b)—was not declared to be either an element of that Article or one of

---

7. Similar results have been reached in those cases controlled by *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). *See United States v. Sawinski,* 16 M.J. 808 (N.M.C.M.R. 1983) (Barr, J., dissenting), for a discussion of the "self-imposed bulwark" created when technical and ritualistic form reign.

the basic "objectives" of *Donohew*.[8] It can, therefore, be confidently concluded that, as long as the military judge advises, and obtains the assurances of understanding from, an accused of the right to obtain individually selected counsel, civilian or military, the mandate of *Donohew* has been met.

Our review of the progeny of *Donohew* which have issued from the Court of Military Appeals reveals that the decisions can be placed into three general categories: (1) those cases reversed because the in-court colloquy mandated by *Donohew* was not conducted;[9] (2) those convictions affirmed where the colloquy established advice and understanding regarding the core "elements" of Article 38(b), UCMJ;[10] and, (3) those cases reversed for failure of compliance with the "elements" ingredient. In this latter category are *United States v. Jorge*, 1 M.J. 184 (C.M.A.1975) (total failure to advise accused of right to hire civilian counsel) and *United States v. Copes*, 1 M.J. 182 (C.M.A.1975) (advice that limited choice of individual military counsel to one selected from the local staff judge advocate office). In each of these cases, the advice tendered by the military judge had the effect of limiting the exercise by accused, or depriving him, of a statutory right—such right being one of the basic "elements" of Article 38(b), UCMJ. When these decisions are considered in light of *Turner, supra*, the distinction between an *elemental right*—wherein prejudice attaches from misadvice or incomplete advice—and a *non-elemental right*—for

which advice need not be tendered—becomes apparent.

The fourth ingredient of *Donohew* has, in part, been touched upon—the understanding of an accused of his entitlement to counsel as specified within Article 38(b), UCMJ. When read with the benefit of the *Turner* decision, this means an understanding of the accused's right to individually select his primary counsel. It did not include his right to retain his detailed counsel—who, by law, became the secondary, or associate, counsel of record. It also conveys the sense that *Donohew* speaks only to advice as to that counsel to whom an accused is entitled to as a statutory right—not a counsel whose representation of an accused is contingent solely upon the exercise of another's discretion. In this regard, we refer to the sole prerogative of the convening authority to appoint such assistant defense counsel "as he deems necessary or appropriate"[11] or "as he considers appropriate."[12]

▇ Informative in this regard is the case of *United States v. Jordan, supra*, wherein the general principle was established that an accused who has obtained civilian counsel is not entitled, under Article 38(b), UCMJ, to individual military counsel.[13] The importance of *Jordan* to the discussion of an accused's entitlement to counsel is revealed by the Court's treatment of the appointment of assistant counsel, as then provided for in Article 27(a), UCMJ:

8. A review of the *Turner* colloquy reveals that such advice was, in fact, not tendered by the military judge to that accused.

9. *United States v. Woodall*, 20 U.S.C.M.A. 454, 43 C.M.R. 294 (1971); *United States v. Davis*, 20 U.S.C.M.A. 353, 43 C.M.R. 193 (1970); *United States v. Johnson*, 20 U.S.C.M.A. 290, 43 C.M.R. 130 (1971); *United States v. Mosley*, 20 U.S.C. M.A. 185, 43 C.M.R. 25 (1970); *United States v. Carter, supra; United States v. Bowman, supra; United States v. Fortier, supra*.

10. *United States v. Jordan*, 22 U.S.C.M.A. 164, 46 C.M.R. 164 (1973); *United States v. Falls*, 20 U.S.C.M.A. 618, 44 C.M.R. 48 (1971); *United States v. Perry*, 20 U.S.C.M.A. 183, 43 C.M.R. 23

(1970); *United States v. Stansberry*, 20 U.S.C. M.A. 177, 43 C.M.R. 17 (1970); *United States v. Baker*, 20 U.S.C.M.A. 175, 43 C.M.R. 15 (1970); *United States v. Turner, supra*.

11. Article 27(a), UCMJ, Act of 5 May 1950, 64 Stat. 108 (1950).

12. Article 27(a), UCMJ, Military Justice Act 1968.

13. The specific legal holding in *Jordan* was "effectively overruled" by the Military Justice Act of 1981. *See* Analysis to Rules for Courts-Martial (RCM) 506(a), Appendix 21, *Manual for Courts-Martial, 1984* (MCM, 1984).

Some cases may be so complex or involved as to be too much of a burden for one lawyer. For such cases, the Manual for Courts-Martial suggests the appointment of an appropriate number of assistant counsel. MCM, 1969 (Rev.Ed.), paragraph 6. We suppose defense counsel, military or civilian, and appointed or personally selected, can request the appointment of additional assistant counsel. *A request for such assistance is not the same as a right to select military counsel by name.* (Emphasis added.)

*United States v. Jordan,* 46 C.M.R. at 167. The conclusion is inescapable that the appointment of assistant defense counsel is not a right to counsel to which an accused is entitled under, and is, therefore, not an element of, Article 38(b), UCMJ. It is equally conclusive that this is so because the appointment of such counsel is a matter committed solely to the discretion of the convening authority. The appointment of assistant counsel "would indeed be a privilege" granted as a matter of command prerogative.

V

Article 38(b), UCMJ, as amended by the Military Justice Act of 1981,[14] provided:

(b)(1) The accused has the right to be represented in his defense before a general or special court-martial or at an investigation under section 832 of this title (article 32) as provided in this subsection.

(2) The accused may be represented by civilian counsel if provided by him.

(3) The accused may be represented—
(A) by military counsel detailed under section 827 of this title (article 27); or
(B) by military counsel of his own selection if that counsel is reasonably available (as determined under regulations prescribed under paragraph (7)).

(4) If the accused is represented by civilian counsel, military counsel detailed or selected under paragraph (3) shall act as associate counsel unless excused at the request of the accused.

(5) Except as provided under paragraph (6), if the accused is represented by military counsel of his own selection under paragraph (3)(B), any military counsel detailed under paragraph (3)(A) shall be excused.

(6) The accused is not entitled to be represented by more than one military counsel. However, the person authorized under regulations prescribed under section 827 of this title (article 27) to detail counsel in his sole discretion—
(A) may detail additional military counsel as assistant defense counsel; and
(B) if the accused is represented by military counsel of his own selection under paragraph (3)(B), may approve a request from the accused that military counsel detailed under paragraph (3)(A) act as associate defense counsel.

(7) The Secretary concerned shall, by regulation, define "reasonably available" for the purpose of paragraph (3)(B) and establish procedures for determining whether the military counsel selected by an accused under that paragraph is reasonably available. Such regulations may not prescribe any limitation based on the reasonable availability of counsel solely on the grounds that the counsel selected by the accused is from an armed force other than the armed force of which the accused is a member. To the maximum extent practicable, such regulations shall establish uniform policies among the armed forces while recognizing the differences in the circumstances and needs of the various armed forces. The Secretary concerned shall submit copies of regulations prescribed under this paragraph to the Committees on Armed Services of the Senate and House of Representatives.

The Military Justice Act of 1983[15] amended Article 27(a), UCMJ, to reflect that detailed defense counsel need no longer be detailed by the convening authority. Article 38(b), UCMJ, was, by the same Act, amended to conform with Article 27(a), by deleting the

---

**14.** Pub.L. No. 97–81, 95 Stat. 1085 (1981).

**15.** Pub.L. No. 98–209, 97 Stat. 1393 (1983).

reference to "convening authority" and vesting the discretionary power recited therein in "the person authorized under Regulations prescribed under section 827 of this title (article 27) to detail counsel...."

We have set forth Article 38(b) in its entirety in order to commit its provisions to an analysis rooted in the principles extrapolated from our consideration of *Donohew* and its progeny. By principles, we refer to those salient ingredients identified above which define—and confine—the parameters of the advice rule enunciated in *Donohew*.

We have previously adverted to the relationship which we find to exist between the first two stated ingredients—the formalistic requirement of committing the question-response advice colloquy to record and its being predicated, in part, on the theory of paternalism. Though, as recognized above, we do not possess the judicial power to dismantle the relic of paternalism, we offer the following observation for consideration as to the continuing merit of either of these two ingredients:

Adherence to established procedure is certainly good practice. But, a departure from the ritual of established procedure is not necessarily bad practice; it may simply be another way of serving the same purpose and achieving the same goal as the prescribed procedure. (Citation omitted.) However, even bad practice does not justify reversal of an otherwise valid conviction if no harm results to the accused. (Citation omitted.)

*United States v. Whitmire*, 45 C.M.R. at 43. It is significant to note that the issue resolved in *Whitmire* was a challenge to the adequacy—as a matter of form—of the *Donohew* advice.

While we feel confident that *Whitmire* expresses the prevailing common sense view which recognizes that in military practice "[t]he law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal," [16] and are equally at rest with the concept that paternalism, titillating though it may be to the imagination, is outmoded in the face of the realities of present day military practice, we need not admit to the correctness of either view in order to test the advice given in the instant case against the mandate of *Donohew*. To admit that the strictures of these two ingredients still persist in the full cloth of formalism is not result determinative. This is so because the adequacy of the form of the mandated advice colloquy is dependent, for its legal significance, upon the remaining ingredients—the "elements" of Article 38(b) and the entitlements to counsel owing to a military accused as a matter of right.

■ In defining the "elements" of Article 38(b) as now amended by the Military Justice Act of 1983—and as originally enacted by the Military Justice Act of 1981—we find *Turner* dispositive. These "elements" are contained in, and do not reach beyond, Article 38(b)(2) and (3): to be represented by civilian counsel at other than the Government's expense *and* to be represented by detailed military counsel *or* individually selected military counsel, if available. If under *Turner,* interpreting Article 38(b) as it appeared under the Military Justice Act of 1968, advice of an accused's right to retain, at his sole option, the detailed counsel when also represented by individual counsel, whether civilian and/or military, was not necessary to meet the "elements" test of *Donohew*, all the more so can it be concluded that the statutory exposition of that right in Article 38(b)(4), as amended by the Military Justice Acts of 1981 and 1983—to retain, as a right, military counsel, either detailed or individually selected, as associate counsel if represented by civilian counsel—is not an element and, thus, not a matter upon which advice need be tendered.

## VI

Were new elements of Article 38(b) created by the aforementioned Acts? The answer lies in determining the fourth recited

**16.** White, H.E., *American Judicial Tradition*, at 280.

ingredient of Article 38(b)—the entitlements to counsel as a matter of right.

▪ In analyzing this question we are, perforce, drawn to the seemingly unequivocal language found in subsections (5) and (6) of Article 38(b), UCMJ, as presently in effect, that an accused has no entitlement—has no right—"to be represented by more than one military counsel" and, therefore, if "represented by military counsel of his own selection ... any military counsel detailed ... shall be excused." *IF* there be no exception to this language which would create a right to counsel, to be exercised at the sole election of the accused, then it can be concluded that no additional element to Article 38(b) was created by either the 1981 or 1983 Military Justice Acts and that the advice of the military judge was legally correct.

Is there any exception? There can be no question but that there is an exception— but this, in our view, is not enough. The exception must not only create an absolute right in the accused, but it must also be substantively a greater right than that recognized in *Turner*—to retain detailed counsel at an accused's sole election when also represented by individual military counsel—as to which, it not being an element, advice is not required.

Identifying the language of exception is simple; it is found *only* in paragraph (6) of Article 38(b), wherein it is provided that, while the accused is entitled to but one military counsel, the detailing authority,[17] as that term is defined in Article 27, in his sole discretion:

(A) may detail additional military counsel as assistant defense counsel; and

(B) if the accused is represented by military counsel of his own selection ... may approve a request from the accused that military counsel detailed ... act as associate defense counsel.

▪ Consistency in statutory construction suggests—in fact, demands—that if

the term "sole discretion" expresses a definitive grant of power for the act of detailing *assistant* counsel, it must, perforce, also operate to equal extent as to the act of approving a request for retention of originally detailed counsel as *associate* counsel. The discretionary power of the detailing authority to detail assistant defense counsel, as possessed at the time *Jordan* was decided, has not been lessened by the amendments to Article 38(b) in 1981 and 1983. If anything, it has, at least semantically, been enhanced and made more absolute. *Jordan* established, in our view, the proposition that an accused has no right to have assistant defense counsel detailed. There existed then, as there exists today, no right beyond request. If the request be denied, no appeal, by motion or otherwise, could be—or can be—raised to question the exercise of discretion by the detailing authority. The aforementioned consistency dictates that, applying the *Jordan* principle, an accused has, under the present Article 38(b)(6), no right, beyond that of initiating a request, to the continued services of his detailed counsel as associate counsel where he selects individual military counsel.

## VII

If a request to retain detailed counsel as associate defense counsel is denied by the appropriate authority, does an accused have a right to appeal that decision? Article 38, UCMJ, is wholly silent on this issue; MCM, 1984, is not. R.C.M. 506(b)(3) states that the denial decision is "subject to review only for abuse of discretion." The appeal procedure is found in R.C.M. 905(b)(6) and 906(b)(2), wherein it is provided that, by motion for appropriate relief, an accused can submit his objections to the denial of a request for retention of detailed counsel as associate counsel to the military judge. Those same rules provide for appeal from a denial of a request for individual military counsel. In our opinion, these

---

17. The detailing power, vested in the convening authority by the Military Justice Act of 1981, was broadened by the Military Justice Act of 1983 due to the amendment to Article 27(a), UCMJ.

rules go too far in granting a right of review of the decision to deny retention of detailed counsel and, in that regard, are at variance with the implicit command of Congress. We reach this conclusion for three reasons.

First, it is noted that Congress, in drafting and enacting Article 38, implicitly recognized the right, under the Code, to appeal a denial of a request for individual military counsel. *See* Article 38(b)(7), UCMJ. No such right of appeal was prescribed—or even alluded to, explicitly or implicitly—for a decision of denial—or one of inaction, as to detailing assistant defense counsel—under Article 38(b)(6). The legislative history of the Military Justice Act of 1981 reveals that Congress unequivocally intended to continue the right of an accused to seek administrative and judicial appeal, and thus preserve the overview, of a denial of requested individual military counsel, as that right of appeal was recognized under both case law and Manual [18] regulations. The conclusion is commanded that the absence of such expression of intention, in the legislative hearings, floor debates, and the bill as enacted, to create a similar right as to denial of a request for retaining detailed counsel as associate counsel is a manifestation of the resolve of Congress that no such right exist.

Second, the aforementioned legislative history makes clear beyond cavil that a military accused was to be provided the right to only one military attorney. Concerns about limited attorney resources and conservation of time and appropriations in the military were foremost in the minds of the drafters of Article 38(b) and of Congress in enacting the Military Justice Act of 1981. When one reads the legislative history of this amendment to Article 38(b), the conclusion is reached that the word "or" in the statutory phrase "The accused may be represented—(A) by military counsel detailed ...; or (B) by military counsel of his own selection if that counsel is rea-

sonably available ..." was selectively chosen to indicate a limitation of the right to military counsel to but one of two alternatives. (Emphasis supplied.)

Third, and most significant, Congress chose to emphasize the term "sole discretion" in describing wherein the power resides—and to what extent it is vested and to be exercised—to continue the representational services of detailed counsel where individual military counsel was requested and provided. While little insight of an explicit nature is found within the legislative history to define this term, we are not without guidance in determining what Congress intended by its employment. There is but one other provision within the Code where the words "sole discretion" are found—Article 60, 10 U.S.C. § 860, and, specifically, subparagraphs (c)(1), (c)(3), and (e), thereof, which describe the power of the convening authority to act on the findings and sentence post-trial. Notably, this power of "sole discretion" is vested as "a matter of command prerogative." *See* Article 60(c)(1), UCMJ. Prior to the Military Justice Act of 1983, this power was provided by congressional grant within Article 64, UCMJ, 10 U.S.C. § 864. Again, referring to legislative history, we find that this latter article as originally drafted did not contain the word "discretion" or any other phrase to declare the extent of—or limitation upon—the power of the convening authority in this particular. The initial recommendation was to insert the words "for any or for no reason" into the proposed article to evidence the intent of Congress that they were committing the total of command prerogative as the grant of power to the convening authority in reaching such determinations.[19]

The final draft, which added the words "as he in his discretion" to Article 64, was accompanied by these comments:

> Mr. Smart. Yes, sir. Now, article 64, on page 51. The point there was that the

---

**18.** *Manual for Courts-Martial, 1969 (Rev.).*

**19.** Index and Legislative History, UCMJ, at 1183–1185. Article 57(d), UCMJ, 10 U.S.C.

§ 857(d) contains the term "sole discretion" but has been otherwise construed in *United States v. Brownd,* 6 M.J. 338 (C.M.A.1979).

committee wanted to be sure that the convening authority had the right to remit any part of the sentence he wanted to, that is, *to do anything he desired with that sentence*, so far as abating it was concerned.

So I would suggest on page 51, at line 17, immediately before the word "determines" at the end of line 17, insert "as he in his discretion," so that he is not then limited to the findings or sentence or anything else but his discretion. (Emphasis added.) [20]

The evidence we believe to be complete. The term "discretion" as utilized in Article 64, UCMJ, meant "for any reason" and "anything he desired." [21] The Military Justice Act of 1983 added the word "sole" as a modifier to the word "discretion" when describing this power of the convening authority under the amended Article 60, UCMJ. This can only be viewed as further evidence that Congress intended the grant of power to be absolute. There has never been—as indeed there does not exist today—any limitation upon the convening authority's power to disapprove, dismiss, remit, commute, or suspend the findings and sentence—except those specifically stated within the Code. No provision has ever been enacted to permit an appeal by an accused from the exercise of this power on the ground of abuse of discretion. One cannot but conclude that the use of the term "sole discretion" was intended to convey the sense of Congress that no appeal from a decision was permitted where the decision was made in the exercise of the "sole discretion" vested in the designated authority.

Can we, with total confidence, declare that the same analysis must follow in interpreting the only other article of the Code which contains the term "sole discretion" within its grant of power? We believe so. Congress cannot have intended otherwise when it specifically chose those words, rooted as they are in military legal tradition under the Code, to classify the newly created discretionary power of the convening authority or detailing authority regarding retention of detailed counsel as associate counsel to an accused's individual military counsel.

We are sustained in this view when we read, as it must be sensibly read, the term "sole discretion" to operate upon not only the power to grant a request for retention of detailed counsel but also the power to assign assistant counsel under Article 38(b)(6)(A)—which we conclusively know is a non-appealable power possessed by the detailing authority. The legislative histories of the bills which amended Article 38 in the Military Justice Acts of 1981 and 1983 reveal that the detailing authority could properly focus upon the considerations of seriousness of the offenses, complexity of the issues, and relative qualifications and experience of counsel in reaching a judgment as to whether a second military counsel should be provided an accused. If that authority was of the opinion that a second military counsel was necessary, he could appoint an assistant defense counsel in addition to the detailed counsel or, where an accused's request for individual military counsel had been granted, he could, on request of the accused, order the retention of the detailed counsel as associate counsel. Viewed from this perspective, it becomes quite evident that the mechanism providing for a military accused to request retention of his detailed counsel was intended to do no more than alert the detailing authority to an accused's perceived need of additional counsel—a need predicated on the considerations addressed above. Ample evidence to support his conclusion is found in the remarks of Mr. Mitchell, Representative in Congress from New York, and a member of the House of Representatives Committee on Armed Services, in reporting the bill to the House:

> With that amendment that accused will be entitled to either an individual military counsel of his own choice if available under the rules, or an appointed military

---

**20.** *Ibid.* at 1266.

**21.** *Ibid.* at 31 (H.R.).

counsel, but not both. However, in an especially serious case, the commander could make additional military counsel available.[22]

Clearly the power to "make additional military counsel available" includes either appointing assistant counsel or permitting the retention of detailed counsel as associate counsel—both matters to be exercised in that detailing authority's "sole discretion" and reserving unto no one the authority to alter, amend, question, or judge of the correctness of that discretionary decision.

 We conclude, therefore, that the power and authority to permit retention of detailed counsel as associate counsel to an individually selected military counsel is no greater—and no lesser—than that to assign assistant defense counsel, that both are exercised, as a matter of command prerogative, in the sole discretion of the detailing authority, and that the refusal to assign assistant counsel or to permit the retention of detailed counsel as associate counsel is an act of decision so far committed to the discretion of that authority as to be beyond the power of any court to review—and is thus non-appealable. We, therefore, question the validity and enforceability of those parts of R.C.M. 506(b)(3), 905(b)(6) and 906(b)(2) which subject a denial of a request by an accused for retention of his detailed counsel, when once provided with military counsel of his own selection, to review or appeal, by motion or objection. If an accused possesses any right under Article 38(b)(6), it is the extremely limited right to demand only that a decision on a tendered request be made by the detailing authority. Once made, and regardless of the decision, no litigable issue survives.

## VIII

While it may seem that, in declaring ourselves as to the non-appealability from a denial of a request for retention of detailed counsel, we venture needlessly into an area which is not ripe for decision or even at issue, and which, even were it decided to

the contrary, would not be result determinative in our disposition, we believe that submitting the question to the following analysis will prove the merit of extending our consideration to this matter.

Can it not be stated as a general principle that where the law creates a right, it creates at the same time a remedy for the enforcement of that right? If this be so admitted, the converse can also be stated with equal persuasion, that is, that the absence of a remedy bespeaks the non-existence of a right. Thus, in the present context, since the remedy of appeal or review, by motion or otherwise, does not lie from denial of a request to retain detailed counsel as associate counsel, its absence indicates the clear sense of Congress, as based on the legislative history and the choice of the statutory term "sole discretion," that there is no right of a military accused under the Code to retain detailed counsel in that capacity.

 To complete the circle commenced with an analysis of *Donohew*, as refined in *Turner* and *Jordan*, no new "element" of Article 38(b) is created by subparagraph (6) thereof. If then a military accused has no right to more than one military lawyer, has no right to retention of his detailed counsel as associate counsel when provided with military counsel of his own selection, and has neither a right nor even an equitable privilege to seek appeal from a denial of a request entered under Article 38(b)(6)(B), can it be said that the omission of the Article 38(b)(6)(B) advice is violative of the mandate decreed in *Donohew?* We think not.

Much has been made of the language chosen by the military judge in the instant case in declaring the rights to counsel. It would appear that a distinction is sought to be drawn between a conditional sort of advice—such as that the accused "may" or "would ordinarily" lose the services of his detailed counsel when also represented by individually selected military counsel— which either does, or does not, also incorpo-

---

**22.** Congressional Record-House, H 8023, 4 November 1981.

rate the Article 38(b)(6) advice, and advice, such as that provided in this case which declares that the detailed counsel would be "automatically excused" upon approval of a request for individual military counsel, without further advice being tendered. The decisions emanating from this Court seem to support such a dichotomous treatment of the issue. *Compare United States v. Butler,* 19 M.J. 724 (N.M.C.M.R. 1984), with *United States v. Vasquez,* 19 M.J. 729 (N.M.C.M.R.1984), and *United States v. Osterwise,* No. 84 1846 (N.M.C. M.R. 7 June 1984). *See also United States v. Johnson,* No. 84 2189 (N.M.C.M.R. 21 September 1984).

■ If we must choose between these varying forms of advice, the more technically, historically, and legally correct is that which is challenged in the instant case and which has resulted in previous cases decided by this Court in the automatic return of the record for a limited rehearing for re-advisement of rights to counsel. The reality is that, upon approval of a request for individual military counsel, the services of detailed counsel, as a matter of law, are immediately terminated. Those services do not continue until revoked by the detailing authority. To say that the detailed counsel "may" or "would ordinarily" be excused is, in truth, an enlargement upon the law set forth in Article 38(b), U.C.M.J., and the advice required by R.C.M. 901(d)(4)(B). No order of excusal is necessary. No explanation for excusal is required. No action of an accused can prevent the automatic termination of those services; nor can his request serve to automatically cause them to be continued. While he can, subsequent to their demise by operation of law, seek to revive those services, by petition to the detailing authority, the right does not exist in an accused to demand such a revival. The expiration, upon granting a request for individual military counsel, is as final as final can be under the law.

To find error of omission or incompleteness in the advice provided in this case serves as a display of perfect judicial intolerance to a specific command of Congress—that a military accused have the right to only one military attorney—by superimposing thereon some inchoate and equitable interest in favor of a military accused. It would, furthermore, amount to an unwarranted extension of the *Donohew* mandate which only requires that the "elements" of Article 38(b)—those statutory choices to which an accused is entitled to as a matter of primary right—need be explicated upon the record. We should not become so impoverished in our legal reasoning that we permit the idea embraced within *Donohew* to become the servant of a creative imagination rather than the steward of the judicially created right which, though valuable, is circumscribed by the contours of reality. The power of appeal to the imagination would certainly be so elevated were we to ignore—either by a failure to comprehend or an unwillingness to enforce—the limitations which attend *Donohew* and its progeny and, in its stead, superimpose the superficial—and highly speculative—query of whether we are, or are not, able to determine what choice an accused—this appellant—might have made had the breadth of advice been more expansive. The above exhortation to eschew speculation should be properly restricted in its scope of application to those specific instances where it has been employed by the Court of Military Appeals—where there is a total failure on the part of the military judge to advise as to the definitive "elements" of Article 38(b), or a restriction, by misadvice, on the exercise of these elemental rights. *See United States v. Copes, supra,* and *United States v. Jorge, supra.*

In this regard, it is appropriate to consider the following comment found in *United States v. Turner, supra:*

> When an accused has answered no to a question whether he desired civilian counsel and yes to a question whether he was satisfied with his detailed counsel, must the military judge nonetheless say to the accused, in effect, "If you desired the counsel you have indicated you do not desire, the counsel you do desire

would be available to assist the counsel you do not want."

We regard the possibility that the appellant would have retained civilian counsel if the military judge had informed him he would not lose his detailed military counsel as being so remote that reversal is not justified.

*United States v. Turner*, 43 C.M.R. at 10–11. In the instant case, the same "near absurdity ... is demonstrable." We regard the possibility that the appellant would have requested individual military counsel if the military judge had informed him that his detailed counsel, whom he desired to represent him, would be automatically excused, that, though he could request the services of his detailed counsel be revived, the decision on such request was committed to the sole discretion of the detailing authority and would normally not be approved, and that he should therefore be prepared to go to trial with the counsel he did not want and give up the services of the counsel he did want, "as being so remote that reversal is not justified." Especially is this so where appellant, as in *Turner*, specifically rejected the opportunity to obtain representation by any attorney—civilian or military—other than his detailed counsel, with whom he was well pleased.

## IX

In summary, we hold: (1) that the advice tendered by the military judge complied with Article 38(b), UCMJ; (2) that the advice mandate of *Donohew* is a judicially created procedure not required by Article 38(b), but, rather, dictated under the concept of the general supervisory power which has been assumed by the Court of Military Appeals; (3) that failure to comply with *Donohew* heretofore resulted in an automatic finding of general prejudice and mandated reversal; (4) that *Donohew* is complied with if the "elements" of Article 38(b) are addressed to an accused and the accused indicates his understanding of those elements; (5) that the "elements" of Article 38(b) are restricted to only those rights to counsel to which a military ac-

cused is entitled as a matter of legal right; (6) that the "elements" of Article 38(b), under current law, are the right to civilian counsel *and* the right to *either* detailed military counsel *or* individually selected military counsel; (7) that a military accused has no right to more than one military attorney; (8) that an accused has no greater right to the retention of his detailed counsel as associate counsel than he does to the appointment of assistant defense counsel; (9) that the approval of a request for individual military counsel automatically excuses, by operation of law, the detailed counsel from the case; (10) that though an accused may petition for revival of the services of his detailed counsel, that decision is one committed to the sole discretion of the detailing authority and is not subject to review or appeal; (11) that, since the accused has no right to appointment of assistant counsel, he has absolutely no right to retention of his detailed counsel as associate counsel; (12) that Article 38(b)(6) does not set forth new or additional "elements" of Article 38(b), but rather, does no more than describe the powers held by the detailing authority to be exercised as a matter of command prerogative; (13) that, as Article 38(b)(6) does not describe "elements" of the Article, the advice mandated in *Donohew* is not violated if advice concerning matters contained within that subparagraph is not tendered to a military accused by the military judge; and, (14) that advice to an accused that the services of his detailed counsel are automatically terminated upon approval of his request for individual military counsel is a correct —and, under the elements test of *Donohew*, legally complete—statement of the law. Accordingly, we find no error in the advice as to counsel provided appellant by the military judge in this case.

## X

■ While the disposition announced sufficiently speaks to the error addressed, we believe it incumbent upon us to add the following observation. As discussed earlier in this opinion, the *Donohew* mandate

was published pursuant to the general supervisory power assumed by the Court of Military Appeals over the administration of military justice. We pointed out that reversal for failure to comply with the mandate was ordered under the concept of general prejudice. We, further, articulated the view that, under the holdings of the Court of Military Appeals, errors involving the concept of general prejudice, like those involving violations on non-fundamental constitutional rights and military due process, were to be treated as being exceptions to the harmless error statute of Article 59(a), UCMJ. The Court of Military Appeals, in the recent case of *United States v. Remai*, 19 M.J. 229 (C.M.A.1985), has explicitly recognized that the constitutional harmless error rule is to be applied in the military. By its reference to *United States v. Wilson*, 2 U.S.C.M.A. 248, 8 C.M.R. 48 (1953), the Court implicitly, in our opinion, further rejected the concept of general prejudice and its existence as an exception to the harmless error rule of Article 59(a). Thus, even if the "near absurdity" of finding the advice tendered in the instant case to be in violation of the mandate of *Donohew* is accepted, we believe the appropriate test to apply for such violation is that found in Article 59(a), UCMJ—specific prejudice. Applying this standard, there is not even the remotest possibility that a substantial right of appellant has been materially prejudiced in this case.

We see no reason why the rationale and holding of this case would not be equally applicable—and the same result obtain—to cases tried on and after 1 August 1984. The elements of *Donohew* have not been extended by R.C.M. 901(d)(4)(B). We would, therefore, test a violation of that rule, for cases tried on and after 1 August 1984, solely by the concept of specific prejudice as enunciated in Article 59(a), U.C.M.J.

Accordingly, the specified issue originally articulated, and as amended within this opinion, is answered in the affirmative, and the findings and sentence as approved on review below are affirmed.

Chief Judge GORMLEY and Judges GREGORY, KERCHEVAL, COUGHLIN, and MITCHELL concur.

CASSEL, Judge (concurring):

I concur completely with the *holding* of the principal opinion and the narrow rationale for it, except to the extent that it indicates that the legislative history does not envision a paternalistic attitude by the supervisory court—the Court of Military Appeals. The statutory scheme clearly envisions such a role for that Court. Any legitimate criticism of actions taken because of excess on the part of the Court in the exercise of that role *should* be given proper consideration—by the Court of Military Appeals, itself, and by Congress (by logical extension this would apply after 1 August 1984, to the U.S. Supreme Court's consideration of the actions of the Court of Military Appeals).

GLADIS, Judge (dissenting):

I dissent because I conclude that the military judge committed prejudicial error by giving the accused erroneous and misleading advice on his rights to counsel.

The judge advised the accused that, if an individual military counsel were made available to represent him, his detailed defense counsel "would be automatically excused and he wouldn't participate further." He did not advise him that if he were represented by individual military counsel, the convening authority could in his sole discretion approve a request from the accused that detailed counsel act as associate defense counsel. In response to the judge's queries the accused then stated that he would not request individual military counsel and that he was satisfied to be represented by his detailed defense counsel and no one else.

Article 38(b), Uniform Code of Military Justice, 10 U.S.C. § 838(b), originally provided:

The accused shall have the right to be represented in his defense before a general or special court-martial by civilian

counsel if provided by him, or by military counsel of his own selection if reasonably available, or by the defense counsel duly appointed pursuant to article 27. Should the accused have counsel of his own selection, the duly appointed defense counsel, and assistant defense counsel, if any, shall, if the accused so desires, act as his associate counsel; otherwise they shall be excused by the president of the court.

There were no significant changes to the statute until Article 38(b) was amended by the Military Justice Amendments of 1981, Pub.L. No. 97–81, § 4(b), 95 Stat. 1085, 1088 (1981) (codified as amended at 10 U.S.C. § 838(b) (1981)) to provide in pertinent part:

(b)(1) The accused has the right to be represented in his defense before a general or special court-martial or at an investigation under section 832 of this title (article 32) as provided in this subsection.

(2) The accused may be represented by civilian counsel if provided by him.

(3) The accused may be represented—

(A) by military counsel detailed under section 827 of this title (article 27); or

(B) by military counsel of his own selection if that counsel is reasonably available (as determined under regulations prescribed under paragraph (7)).

(4) If the accused is represented by civilian counsel, military counsel detailed or selected under paragraph (3) shall act as associate counsel unless excused at the request of the accused.

(5) Except as provided under paragraph (6), if the accused is represented by military counsel of his own selection under paragraph (3)(B), any military counsel detailed under paragraph (3)(A) shall be excused.

(6) The accused is not entitled to be represented by more than one military counsel. However, a convening authority, in his sole discretion—

(A) may detail additional military counsel as assistant defense counsel; and

(B) if the accused is represented by military counsel of his own selection under paragraph (3)(B), may approve a request from the accused that military counsel detailed under paragraph (3)(A) act as associate defense counsel.

In *United States v. Donohew,* 18 U.S.C. M.A. 149, 39 C.M.R. 149 (1969), the Court of Military Appeals required that the records in future cases contain the accused's personal response to direct questions incorporating each of the elements of Article 38(b), as well as his understanding of his entitlement thereunder. In many of the earlier ensuing cases the Court held that failure to comply literally with this requirement was reversible error and did not test for prejudice. *See United States v. Carter,* 20 U.S.C.M.A. 146, 42 C.M.R. 338 (1970) and *United States v. Bowman,* 20 U.S.C.M.A. 119, 42 C.M.R. 311 (1970). *See also* the cases cited in footnote 9 of the majority opinion. Later, however, the Court treated the failure as an error which must be tested for prejudice. *See United States v. Whitmire,* 21 U.S.C.M.A. 268, 45 C.M.R. 42 (1972) (failure of the trial judge to question the accused directly and obtain his personal response as to his knowledge and understanding of the right to individual military counsel was not prejudicial error where the record demonstrated that the accused knew of this right).

In *United States v. Turner,* 20 U.S.C. M.A. 167, 43 C.M.R. 7 (1970), the Court of Military Appeals held that when an accused has categorically answered no to a question whether he desired civilian counsel and expressed no interest in civilian counsel, the military judge does not err in failing to advise him that if he retained civilian counsel, his detailed counsel could continue to function as an associate counsel. The Court noted that this aspect of knowledge about rights to counsel had not inspired *Donohew,* the basic objectives of which were the assurances that the accused know of his rights to retain civilian counsel or to select a military counsel different from the one detailed to him. The Court regarded the possibility that the accused would have

retained civilian counsel if the judge had informed him he would not lose his detailed counsel as being so remote that reversal was not justified. *Id.*

In *United States v. Copes*, 1 M.J. 182 (C.M.A.1975), the Court held that erroneous and misleading advice by the judge concerning the accused's right to individual military counsel is prejudicial error, even though the accused states that he desires to be represented by detailed counsel, if it cannot be determined from the record what choice the accused might have made had he been given proper advice as required by *Donohew, supra. Also see United States v. Jorge*, 1 M.J. 184 (C.M.A.1975) (failure to advise an accused represented by individual military counsel that he had the option to be represented by civilian counsel rather than individual military counsel was held to be prejudicial error because the Court could not determine what choice the accused would have made had he been given the required advice).

The rule to be gleaned from the applicable precedents is that incomplete, erroneous, or misleading advice to an accused on his rights to counsel under Article 38(b) is prejudicial error, if it cannot be determined from the record what choice the accused would have made had he been given the proper advice.

The issue is whether, under the circumstances of this case, the military judge's advice to the accused on his rights was incomplete, erroneous, or misleading. If it was not, further inquiry is unnecessary. If it was, the error must be tested for prejudice.

The advice of the judge to the accused that if he were represented by individual military counsel, his detailed defense counsel would be automatically excused and not participate further in the case was patently erroneous and misleading. It is contrary to the plain language of Article 38(b), which provides that a convening authority in his sole discretion may approve a request from an accused represented by individual military counsel that detailed counsel act as associate counsel. In context the advice leads to the inescapable conclusion that, if the accused were represented by individual military counsel, he could under no circumstances have his detailed counsel act as associate counsel. *See United States v. Vasquez*, 19 M.J. 729 (N.M.C.M.R. 1984). Plainly and simply, the judge's advice here was erroneous. It does not matter that the accused did not have an unqualified right to retain detailed counsel or that an argument can be made that the convening authority's discretion to approve a request to retain detailed counsel is not an essential element of Article 38(b). The advice is still erroneous and the error must be tested for prejudice.

This is not a case in which the accused stated before he received erroneous and misleading advice that he did not desire to be represented by individual military counsel. *Cf. United States v. Turner, supra.* Here the accused received the erroneous advice before the judge asked if he desired to be represented by individual military counsel. Under the circumstances of this case, I cannot determine from the record what choice the accused would have made had he not received the erroneous advice. Therefore, I would remand the case for a limited hearing to establish the accused's understanding of his rights. *See United States v. Barnes*, 21 U.S.C.M.A. 169, 44 C.M.R. 223 (1972) (a proceeding in revision may be used to establish compliance with the *Donohew* requirement). Accordingly, I dissent.

Judges MAY * and RAPP join in the dissent.

---

* Colonel James S. MAY took final action in this case prior to his detachment on 3 May 1985.