UNITED STATES, Appellee

v

JOHN P. DONOHEW, Private First Class, U. S. Marine Corps, Appellant

18 USCMA 149, 39 CMR 149

No. 21,426

March 7, 1969

 ▄

*Lieutenant V. L. Evans*, JAGC, USNR, argued the cause for Appellant, Accused.

*Commander Walter F. Brown*, JAGC, USN, argued the cause for Appellee, United States. With him on the brief was *Colonel C. R. Larouche*, USMC.

## Opinion of the Court

FERGUSON, Judge:

Accused was convicted, upon his plea of guilty, by a special court-martial convened at Camp Lejeune, North Carolina, of absence without leave, failure to go to his appointed place of duty, and breach of restriction, in violation of Articles 86 and 134, Uniform Code of Military Justice, 10 USC §§ 886 and 934, respectively. He was sentenced to a bad-conduct discharge, confinement at hard labor for five months, forfeiture of $60.00 per month for a like period, and reduction to the pay grade of E–1. Intermediate appellate authorities have approved the findings and sentence. We granted review to consider the following two issues:

I. Whether Article 38(b), Uniform Code of Military Justice, was complied with.

II. Whether the cumulative effect of the numerous errors cited in the supervisory authority's Staff Legal Officer's review deprived the accused of due process of law.

The particular facts of the charged offenses are largely unimportant to our consideration of the granted issues. Rather, we are mainly concerned with certain procedures followed in the trial and their effect on the conviction of the accused.

At the outset, and in accordance with the trial guidelines set down by the president under the authority of Article 36 of the Code, supra (Appendix 8, Manual for Courts-Martial, United States, 1951), the record reflects the following colloquy:

"TC: Has the accused been informed of his rights concerning counsel as set forth in Article 38b, UCMJ?

"DC: The accused has been so advised.

"TC: By whom will the accused be defended?

"DC: The accused will be defended by the appointed defense counsel, First Lieutenant D. L. HORNE, U. S. Marine Corps."

Our first granted issue revolves about this portion of the record. Article 38 (b), Code, supra, provides:

"The accused has the right to be represented in his defense before a general or special court-martial by civilian counsel if provided by him, or by military counsel of his own selection if reasonably available, or by the defense counsel detailed under section 827 of this title (article 27). Should the accused have counsel of his own selection, the defense counsel, and assistant defense counsel, if any, who were detailed, shall, if the accused so desires, act as his associate counsel; otherwise they shall be excused by the president of the court."

Article 27 of the Code, supra, in general, describes the qualifications for counsel authorized to appear in general or special courts-martial.

This accused was tried by a court designated in appointing order Serial 4-68, dated March 28, 1968. A copy of the order is appended to the record. First Lieutenant Horne (not a lawyer in the sense of Article 27) was named therein as defense counsel for all cases to be brought before that court. A nonlawyer was also appointed to represent the Government. Second Lieutenant C. W. Fullerton, also not a lawyer, was named as assistant defense counsel. The latter, *according to a notation on page 2 of the record*, "was excused with the express consent of the accused and the convening authority." Similarly, the nonlawyer appointed assistant trial counsel had been excused and was not present.

In the recent case of United States v Nichelson, 18 USCMA 69, 39 CMR 69, we observed that notations in the record as to the presence or absence at trial of certain persons generally are the result of an announcement by trial counsel.

See, generally, Appendix 8 of the Manual, supra. However, there, as here, the record did not attribute the statement as to the absence of Lieutenant Fullerton to any responsible person. Since this record failed to disclose that inquiry was made to determine that the accused consented to the absence of Lieutenant Fullerton, the proceedings were irregular. United States v Nichelson, supra. See also United States v Tavolilla, 17 USCMA 395, 38 CMR 193. But, as we held in United States v Koren, 17 USCMA 513, 38 CMR 311, the matter can be waived. This record expressly reflects accused was to be "defended by the appointed defense counsel, First Lieutenant D. L. HORNE, U. S. Marine Corps." Fairly read, and absent any complaint by the accused, such indicates waiver of his entitlement to the presence and services of the other members of the defense team. United States v Koren; United States v Tavolilla, both supra; United States v Culp, 14 USCMA 199, 33 CMR 411, separate opinion by Judge Ferguson, at page 218.

But that is not the whole of the matter for our prime inquiry deals with the accused's knowledge of his right to counsel as provided in Article 38 (b), Code, supra. Paragraph 46d, Manual, supra, pages 66-67, states that "[w]hen charges are referred to a court for trial the defense counsel will inform the accused immediately that he has been appointed to defend him at the trial, explain his general duties, and advise him of his right to select individual counsel, civil or military, of his own choice pursuant to Article 38b." As noted above, this record of trial contains an affirmative declaration that such advice was given to the accused by Lieutenant Horne.

We are constrained to hold, therefore, that Article 38 (b) was complied with, albeit minimally. We are, nevertheless, concerned with the apparent routine manner in which this determination is generally made at trial. The Government contends that a simple inquiry by trial counsel and an affirmative reply by

151

defense counsel is all that is *required* by the Manual's or the Navy's trial guides; that absent some showing an accused did not understand the advice, or in fact was denied the opportunity to select individual counsel, civil or military, of his own choice, nothing more is necessary to an affirmative resolution of the question in this or any similar case.

While we recognize Government's position, we do not believe it accords sufficient interest in, or solicitude for, determining that an accused adequately understands a most valuable right accorded him by the law. Recent decisions of the highest court in the land have greatly upgraded an accused's right to the advice and assistance of counsel, both before and at time of trial. See, generally, Gideon v Wainwright, 372 US 335, 9 L Ed 2d 799, 83 S Ct 792 (1963), and Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966). In addition, specific procedures have been established for a showing, on the record, that these rights have been properly accorded. We would be remiss in our judicial duty were we to be less solicitous regarding this matter. Especially is this so when consideration is given to the unique position of a large number of military accused. Many are now serving, by reason of compulsory laws, away from home, family, and friends for the first time and some are of an age where in other jurisdictions they would be held responsible only as juveniles. These factors call for extraordinary concern.

We believe the seriousness of the situation dictates that the record should contain the accused's personal response to direct questions incorporating each of the elements of Article 38(b), as well as his understanding of his entitlement thereunder.

*Accordingly, the record in each special or general court-martial convened more than thirty days after the date of this opinion should reflect this requirement has been met.* United States v Rinehart, 8 USCMA 402, 24 CMR 212. In taking such action, we intend no reflection on the ability of certified counsel, but conclude that a full statement

152

on the record eliminates uncertainty on appeal and makes it clear to all concerned that the accused has received proper advice.

Since the second granted issue has reference to matters contained in the Staff Legal Officer's review, the pertinent portion thereof is set forth hereinafter:

"II. COMMENTS ON THE RECORD OF TRIAL AND ALLIED PAPERS:

(1) "The President of the court failed to ask defense if the accused had been informed of his right to have enlisted persons sit as members of the court. However, trial counsel was asked if the accused had made such a request in writing. And this sufficiently raised the question at trial that a waiver by the accused can be presumed (R–3).

(2) "After the trial counsel stated the general nature of the charges, he said charges were preferred by a Captain WILLIS, Company Commander (R–4).

"Actually, a 1st Sgt. acted as accuser and trial counsel's error was corrected when he correctly identified the accuser later in the trial (R–5).

(3) "It is obvious from a reading of the charge sheet that the additional charges were not sworn to by an accuser. An additional page 3. should have been incorporated. The fact that the additional charges were not sworn to was error but was not prejudicial as the accused did not object, United States v MAY, 2 CMR 80, United States v MARCY, 2 CMR 82, United States v NEWMAN, 9 CMR 60A. The Manual (MCM, 1951, par. 29c) derects [sic] that accused not be tried on an unsworn charge over his objection but accused did not object to trial on the add. charges. I find no prejudice to the accused.

(4) "The three day waiting period had not elapsed before trial of the accused. Such defect in the face of no defense objection can be presumed waived (R–6).

(5) "In reading the elements of the offenses to which the accused pleaded guilty the president failed to accur-

ately outline all the elements of the first additional charge, failure to go to appointed place of duty in violation of Article 86 (R–6). Since there was no indication of an improvident plea this error was not prejudicial.

(6) "The President, in questioning the accused on the providency of his plea omitted some statements normally included in the inquisition (R–7). The omissions were minor and did not prejudice the accused or taint his plea of guilty.

(7) "Before the accused's counsel made an unsworn statement for the accused, the President failed to inform accused of his right to make a sworn statement in extenuation and mitigation (R–9). This omission was not prejudicial as the accused through his counsel can be assumed to possess knowledge of this right.

(8) "The President failed to ask for sentencing arguments from counsel (R–9). As trial counsel did not argue and defense voiced no objection to the omission the accused was not harmed.

(9) "In his initial action the convening authority improperly executed the bad conduct discharge (par. 88d, MCM); however, this is merely a proceedural [sic] error and there is no chance of prejudice to the accused." [Numbering of the above by this Court for clarification.]

The defense contends that the numerous departures from the form prescribed by the Manual, supra, demonstrates a disregard for those procedural safeguards which might have assured the accused a fair trial and that their cumulative effect requires reversal.

The Government, on the other hand, asserts that of the nine errors listed by the Staff Legal Officer only the second, third, sixth, and ninth have any merit; and these, according to counsel, were clearly harmless both separately and cumulatively. With regard to the seventh and eighth errors, the Staff Legal Officer did not have the benefit of a Certificate of Correction, dated January 8, 1969, which the Government, in its brief, advised would be submitted to this Court "as soon as it is receipted for by the accused and received by the appellate Government counsel." The remainder, errors numbered one, four, and five, were incorrectly designated as such because of a misinterpretation by the Staff Legal Officer of the applicable law on the particular subject matter.

We do not believe it necessary to discuss each item separately. Suffice it to say that in those instances where the Government urges us to hold waiver by failure of the accused's counsel to object we will not do so. Accused was defended by nonlawyer counsel and as we noted in United States v Pinkston, 6 USCMA 700, 706, 21 CMR 22, "[w]e have always been unwilling to charge against accused persons waivers based on the conduct of counsel of this description. See, e.g., United States v Moore, 4 USCMA 675, 677, 16 CMR 249, 251." See also United States v Culp, supra.

As early as United States v Yerger, 1 USCMA 288, 3 CMR 22, we recognized that numerous errors of trial can have the cumulative effect of denying an accused due process of law. If, considering the case in its totality, one is left in grave doubt, the conviction cannot stand. Kotteakos v United States, 328 US 750, 90 L Ed 1557, 66 S Ct 1239 (1946). Our reading of this record leaves us convinced that the cumulative effect of the several errors substantially impaired the fairness of the trial. United States v Yerger, supra; United States v Parks, 17 USCMA 87, 37 CMR 351. The findings of guilty and sentence should not stand. United States v Yerger; United States v Parks, both supra. See also United States v Evans, 18 USCMA 3, 39 CMR 3.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge QUINN and Judge DARDEN concur.