UNITED STATES, Appellant,

v.

Walter T. JOHNSON, Jr., Seaman
Recruit, U.S. Navy, Appellee.

No. 51075.
NMCM 84–2189.

U.S. Court of Military Appeals.

Jan. 13, 1986.

For Appellant: *Lieutenant David O.
Vollenweider, III*, JAGC, USNR (argued);
*Captain W.J. Hughes*, JAGC, USN (on
brief).

For Appellee: *Lieutenant Daniel D. Downing*, JAGC, USNR (argued); *Major Patrick H. McGann, Jr.*, USMC, and *Lieutenant Rebecca Gilchrist*, JAGC, USNR (on brief); *Major Michael E. Canode*, USMC.

## Opinion

EVERETT, Chief Judge:

A military judge sitting as a special court-martial found the accused guilty of two unauthorized absences, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886, and sentenced him to a bad-conduct discharge as well as confinement at hard labor and forfeiture of $350.00 pay per month for 3 months. The convening authority approved the sentence but, pursuant to a pretrial agreement, suspended confinement at hard labor in excess of 15 days. Subsequently the Court of Military Review found that the military judge had misadvised Johnson about his rights to counsel and returned the record to the convening authority for a limited rehearing concerning the accused's understanding of his rights or, if this was impractical, to set aside and dismiss the charges.

Thereupon, the Acting Judge Advocate General of the Navy certified this issue to us:

WHETHER THE NAVY-MARINE CORPS COURT OF MILITARY REVIEW ERRED BY FAILING TO MEASURE A VARIANCE BY THE MILITARY JUDGE FROM THE REQUIREMENTS OF *UNITED STATES V. DONOHEW*, 18 U.S.C.M.A. 149, 39 C.M.R. 149 (1969), FOR MATERIAL PREJUDICE TO A SUBSTANTIAL RIGHT OF THE ACCUSED, IN ACCORDANCE WITH ARTICLE 59(a), U.C.M.J., WHERE THE ACCUSED WAS REPRESENTED BY COUNSEL, WHERE HE DECLINED REPRESENTATION BY INDIVIDUAL CIVILIAN OR MILITARY COUNSEL, WHERE HE PLED GUILTY TO TWO SIMPLE ABSENCE OFFENSES, WHERE HE ENTERED A PRETRIAL AGREEMENT FAVOR-ABLE TO HIM, WHERE HE REQUESTED A BAD CONDUCT DISCHARGE AND WHERE ALL CONFINEMENT IN EXCESS OF FIFTEEN DAYS WAS SUSPENDED.

### I

Soon after court convened, the military judge attempted to establish on the record that the accused understood his rights to counsel. This colloquy occurred:

MJ: All right. Thank you. Seaman Recruit Johnson, to make certain that you understand your counsel rights, I'm going to explain those rights to you once again. Do you understand that you have the right to hire a civilian lawyer to defend you in this court-martial? Are you aware of that?

ACCUSED: Yes, sir.

MJ: And if you did that, you would have to incur all of the costs charged by your civilian counsel. Do you understand that as well?

ACCUSED: Yes, sir.

MJ: Now, you may also request representation from any other military lawyer of your own choosing, and if you made a request for some other military lawyer who was actually made available to assist you, that would not cost you anything, it would be entirely at government expense. Do you understand?

ACCUSED: Yes, sir.

MJ: Now, you're entitled to only one government provided counsel in any proceeding. If you made a request and obtained the services of some other military counsel, *that would result in Mr. Utecht's be [sic] automatically excused and he wouldn't assist you any further.* Do you understand that those are the consequences of requesting and receiving the aid of some other military lawyer?

ACCUSED: Yes, sir.

MJ: Do you understand your counsel rights?

ACCUSED: Yes, sir.

MJ: Do you have any questions at all about any of those rights?

ACCUSED: No, sir.

MJ: Are you going to hire a civilian attorney to represent you?

ACCUSED: No, Sir.

MJ: Do you intend to request representation by some other military lawyer other than Mr. Utecht?

ACCUSED: No, sir.

MJ: Are you satisfied with Mr. Utecht's representation?

ACCUSED: Yes, sir.

MJ: All right. Be seated.

(Emphasis added.)

The accused successfully claimed in the Court of Military Review that the advice provided by the judge was inaccurate. His rationale was that, although the Uniform Code provides that an "accused is not entitled to be represented by more than one military counsel," *see* Art. 38(b)(6), 10 U.S.C. § 838(b)(6), it does not completely preclude the possibility of representation by more than one military lawyer at government expense. Thus, contrary to the judge's statement, the accused might successfully request individual military counsel and yet manage to retain the services of Lieutenant Utecht, who had been detailed as defense counsel by the special court-martial convening order.[1] In that event, the stated consequence that Utecht would be "automatically excused" would not occur.

## II

### A

In determining whether action should be taken to remedy the military judge's failure to delineate the accused's options completely, our starting premise is that Congress intended to bestow on servicemembers a right to counsel unparalleled in civilian criminal trials. *See United States v. Gnibus*, 21 M.J. 1 (C.M.A.1985). Unlike his civilian counterpart, the military accused will be furnished counsel without any demonstration of indigency on his part and may ask that a specific military lawyer be appointed to represent him. Moreover, until the Uniform Code was amended in 1981, an accused even could obtain the services of both the requested counsel and the counsel who originally had been detailed to represent him. *Id.* at 6.

To some extent, this broad right to counsel is grounded in history; but there may be additional reasons for the legislative generosity. Congress may have concluded that servicemembers, who risk their lives for their country, should be granted a right to counsel greater than that which would be minimally required by the Constitution. Moreover, because the convening authority who refers cases for trial promulgates the convening order under which defense counsel is detailed,[2] it may have seemed that greater confidence would exist in the adequacy and independence of counsel if the accused had some choice as to who would represent him—a choice which could include lawyers from another command or even another service.

Recognizing the significance of an accused's right to request individual military counsel, who would serve at government expense, or to obtain civilian counsel at the accused's expense, this Court decided long ago that the trial judge should establish on the record that an accused understands these rights. *United States v. Donohew*, 18 U.S.C.M.A. 149, 39 C.M.R. 149 (1969). There we stated:

---

1. The person who details defense counsel may "in his sole discretion ... detail additional military counsel as assistant defense counsel"; and also he "may approve a request from the accused that" detailed "military counsel ... act as associate defense counsel." Art. 38(b)(6), Uniform Code of Military Justice, 10 U.S.C. § 838(b)(6). *See United States v. Gnibus*, 21 M.J. 1 (C.M.A.1985).

2. Legislation in 1983 contemplated that, pursuant to service regulations, defense counsel might be appointed by persons other than the convening authority. Military Justice Act, Pub.L. No. 98–209, § 3(c)(2)(A), 97 Stat. 1394.

We believe the seriousness of the situation dictates that the record should contain the accused's personal response to direct questions incorporating each of the elements of Article 38(b), as well as his understanding of his entitlement thereunder.

18 U.S.C.M.A. at 152, 39 C.M.R. at 152.

On several occasions this requirement has been criticized by the United States Navy-Marine Corps Court of Military Review. *United States v. Frazier*, unpublished[3] (NMCM 84–3167—October 24, 1984). In the present case the court below—although granting relief to the accused—noted that "we are constrained by case law to elevate form over substance in finding error by the military judge."

Writing for the majority after an *en banc* hearing, Judge Barr expounded the view that the *Donohew* requirement was imposed in 1969 because of the "paternalistic" approach being employed then by this Court and because at that time many accused were represented by nonlawyers in special courts-martial. *United States v. Jerasi*, 20 M.J. 719, 726 (N.M.C.M.R.1985). Judge Barr reasoned that, because these conditions no longer exist, the requirement has become an anachronism that should be abandoned. *Id.* at 727 n. 6.

Bolstered by such judicial opinions, government appellate counsel use this appeal as an occasion to contend that *Donohew* should be overruled and that the military judge should no longer be required to advise an accused on the record about his right to counsel and ascertain his understanding of that right. In a sense, this contention is irrelevant to this case. If the accused relinquished a valuable right because he was misinformed by the judge, it would make no difference whether the judge was required to give advice on this subject or simply volunteered it.

Even if considered on its merits, though, the Government's position is not persuasive. In the first place, *Donohew* was not expressly and solely grounded on the circumstances to which Judge Barr adverts in *Jerasi;* and so, the change in those circumstances does not necessitate overruling *Donohew.* Secondly, we note that express warnings of a right are frequently utilized as a means of assuring that a waiver of those rights is knowing and voluntary. *See United States v. Donohew, supra; Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Fed.R. Crim.P. 11(c). Indeed, in the Manual for Courts-Martial, United States, 1984, the President requires that the military judge advise an accused of his right to counsel, R.C.M. 901(d)(4)[4] and that, after announcement of sentence but before adjournment, the judge inform an accused of his post-trial and appellate rights. R.C.M. 1010(a).

We believe that, because the *Donohew* warning requirement has not been applied by this Court in an unduly strict and technical manner, *cf. United States v. Turner,* 20 U.S.C.M.A. 167, 43 C.M.R. 7 (1970), it does not impose an excessive burden on the military judge. Moreover, although in the case at bar, the requirement has indirectly created an appellate issue, we are sure that this cost is outweighed by benefits from the warning in other cases where it has forestalled post-trial claims that, if the accused had known of his right to do so, he would have asked for a different military lawyer or would have employed civilian counsel.

**B**

The most significant elements of Article 38 are that it provides an accused with three alternatives: (1) detailed counsel, (2) requested military counsel at government expense, or (3) civilian counsel at the accused's own expense. *United States v.*

---

3. "We are constrained by case law to elevate form over substance in finding error by the military judge."

4. Admittedly, this Rule may not be the result of a determination by the President that the warn-

ing was desirable but only that it was required under our precedents. *See* App. 21, Analysis of R.C.M. 901(d)(4), Manual for Courts-Martial, United States, 1984.

*Turner, supra.* Even after Article 38 was amended in 1981, it appears that advice calling attention to these three options would satisfy *Donohew* and that there would be no need to mention excusing detailed counsel unless the accused indicated an interest in requesting individual military counsel. Even so, the advice which a military judge is required to give under the 1984 Manual goes into greater detail and includes informing the accused that, "if afforded individual military counsel, the accused may request retention of detailed counsel as associate counsel, which request may be granted or denied in the sole discretion of the authority who detailed the counsel." [5]

Unfortunately, the military judge went beyond referring to the accused's right to request military counsel but stopped short of this more complete explanation now called for under R.C.M. 901(d)(4). Appellate defense counsel contend that this incomplete advice had a "chilling effect" on Johnson's exercise of his right to request individual military counsel because he would have erroneously believed that, under no circumstances could he request individual counsel and still retain the services of his detailed counsel, Lieutenant Utecht.

The Government replies that probably the accused never was concerned about whether his detailed counsel would be excused if he requested individual counsel. Moreover, to a substantial extent, the advice from the judge was accurate, because only a slight possibility existed that, if the accused so requested, he would be allowed to retain his detailed defense counsel. Finally, the Government contends that the accused was not prejudiced in any way because his sentence, as suspended pursuant to the pretrial agreement, was lenient.

This last contention misses the point. Although the good performance of the lawyer who defended Johnson would be relevant to any claim that he was deprived of his constitutional right to the effective assistance of counsel, it cannot justify any action by the judge that denied the accused the right granted him by Congress to request individual military counsel. Even if we believe that a defense counsel has obtained excellent results for his client, we cannot exclude the possibility that the requested lawyer might have done even better.

■ The Court of Military Review authorized a limited rehearing to determine whether Johnson misunderstood his right to request counsel. In such a hearing the accused may be cross-examined, among other things, as to whether previously he had been informed of the restrictions applicable to a request for counsel; whether he had discussed these restrictions with counsel; whether he had at any time expressed interest in being defended by someone other than the detailed defense counsel; and whether that interest had dimmed because of the restriction on retaining detailed counsel.

■ In *United States v. Devitt*, 20 M.J. 240 (C.M.A.1985), we ruled that a *DuBay* [6] hearing might be conducted to determine whether the defense attorney who defended a husband and wife had an active conflict of interest. We also held that, in such a hearing, the attorney-client privilege would be waived because of the implicit attack on the attorney's competence. Whether a similar waiver would apply in the present case would depend on whether the accused's evidence at the *DuBay* hearing tended in some way to cast aspersions on his defense counsel's proper performance of duty.

■ The Government contends that the military judge did discuss the accused's three options as to counsel, so a limited rehearing is unnecessary, unless the accused submits an affidavit or other evi-

---

5. The advice does not include a reference to the possibility that the person who details counsel may on his own initiative—even without request by the accused—detail additional military counsel or the assistant defense counsel.

6. *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

dence to the effect that he was misled by the judge's advice and would have requested military counsel if it had appeared that he still might retain the services of his detailed counsel. We agree that, under the circumstances of this case, the court below could have required some showing by the accused as a precondition for his asserting a claim that he had been deprived of his statutory right to request counsel. However, even though the Court of Military Review was free to take this course, we do not believe that it was required to do so. Instead, in its discretion, it could insist that the facts be determined in a hearing where cross-examination of witnesses would be available.

### III

We conclude that the Court of Military Review did not err and that the certified question should be answered in the negative.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed. The record of trial is returned to the Judge Advocate General of the Navy for compliance with the opinion below.

COX, Judge (concurring in the result):

I write separately simply because I feel that the principal opinion does not completely answer the certified question. I do agree that an Article 38 [1] inquiry is necessary, and I concur in my Brother's analysis of the case and the result he has reached.

The question certified to this Court is whether the court below incorrectly failed to apply the "harmless-error" review specified by Article 59(a) of the Uniform Code of Military Justice.[2] The applicability of such a review to this and to guilty-plea inquiries obviously has troubled the United States Navy-Marine Corps Court of Military Review. See United States v. Jerasi, 20 M.J. 719 (N.M.C.M.R.1985); United States v.

Frazier, unpublished (NMCM 84–3167–October 24, 1984).

The Court of Military Review's decisions in Jerasi and Frazier evince concern that this Court is "elevat[ing] form over substance," (United States v. Johnson, unpublished (NMCM 84–2189–September 21, 1984)); that the Court is "paternalistic" (i.e., "we do not possess the judicial power to dismantle the relic of paternalism," United States v. Jerasi, supra at 731); and that such requirements are "an anachronism that should be abandoned," 21 M.J. at 214, construing United States v. Jerasi, supra.

These same criticisms have also been leveled at the Care inquiry,[3] the Grostefon rule,[4] and other rules created by this Court over the years. Initially I, too, was troubled by what seemed to be technical rules. I believed, as did a majority of the court below, that the presence of trained and certified lawyers at every stage of the proceedings obviated the need for such undue paternalism. However, my initial view has softened, and I now feel that there are sound reasons to adhere to the so-called paternalistic rules.

One important reason to insist that military judges build a complete record is to insure that our military justice system continues to operate with the highest standards and is a model of justice in the field of criminal law. It is far more difficult for an accused to complain of unfair or unjust treatment when the record of trial clearly indicates that he understood each and every allegation against him; that he understood each and every right he had at each stage; that he knowingly and consciously waived any of those rights; and that, when appropriate, he acknowledged his own belief in his guilt. Without a complete record to perpetuate these matters, the military justice system is vulnerable to the allega-

---

1. Uniform Code of Military Justice, 10 U.S.C. § 838.

2. 10 U.S.C. § 859(a).

3. United States v. Care, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

4. United States v. Grostefon, 12 M.J. 431 (C.M.A. 1982).

tion that it is a system of "drumhead justice."

A second, yet equally important, reason to adhere to these practices is to avoid prolonged litigation. One need only look at the proliferation of prisoner lawsuits in the state and federal courts to understand quickly why a complete trial record is crucial. Much of this litigation would not be necessary if the trial judge established an affirmative record delineating that the accused understood his rights and effectively waived them. It takes only moments to establish such a record, but subsequent litigation that comes from not having one is costly both in time and money.

Like the Court of Military Review, I am troubled by a prophylactic application of these rules to a record of trial without some allegation of prejudice by an accused, particularly where, as here, he asked to be discharged from the Naval Service. This does not mean, however, that I would retreat one step from the procedural rule set forth in *United States v. Donohew*, 18 U.S.C.M.A. 149, 39 C.M.R. 149 (1969). Further, I would not criticize the court below for literally applying that rule because I believe it serves the function of insuring that records of court-martial proceedings are complete. On the other hand, I would encourage military appellate courts to apply an Article 59(a) test in a case under circumstances such as those presented here. Additionally, I would require the accused to make some allegation as to what different result might have been achieved by another lawyer if he had been present during the proceedings—i.e., that the accused would not have entered a guilty plea.

It is not unreasonable for us to put the burden on the accused to say, through counsel, to the appellate courts that he is dissatisfied with the result in his case; that he wants a new trial or a different result; and that he tell us why.

Thus, in a sense, I agree with the dissatisfaction expressed by the court below. On the other hand, I would not want to diminish the burden on: 1) our excellent military trial judges to perform their duties in a manner that insures a thorough and complete record of trial; or 2) our excellent appellate military judges to insist on receiving such a record for their review. I simply would like to achieve a balance between what is just and proper in terms of Article 59(a).

There is a difference between denying an accused the right to counsel and failing to advise, or misadvising, an accused as to that right. As to the latter, I do not believe reversible error necessarily occurs. Hence, on the facts of this case, I could affirm the findings and sentence. However, I certainly do not object to a hearing to clear up any ambiguities in the military judge's advice. I would leave it to the Court of Military Review to determine what is necessary to fairly resolve this appeal.